[863 NE2d 990, 831 NYS2d 738]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GANESH KISOON, Also Known as GANESH KISSON, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LEON MARTIN, III, Respondent.

Argued January 10, 2007; decided February 13, 2007

**POINTS OF COUNSEL**

*Richard A. Brown, District Attorney,* Kew Gardens (*Donna Aldea* and *John M. Castellano* of counsel), for appellant in the first above-entitled action. The Appellate Division erred in holding that defendant's complaint that the trial court failed to read the jury note to him verbatim was not subject to either the preservation requirement or harmless error analysis. (*People v O'Rama,* 78 NY2d 270; *People v Malloy,* 55 NY2d 296; *People v Gonzalez,* 293 NY 259; *People v Cook,* 85 NY2d 928; *People v Michael,* 48 NY2d 1; *People v Jackson,* 196 NY 357; *People v Jones,* 81 AD2d 22; *People v Starling,* 85 NY2d 509; *People v DeRosario,* 81 NY2d 801; *People v Battle,* 15 AD3d 413.)

*William G. Kastin,* New York City, and *Lynn W.L. Fahey* for respondent in the first above-entitled action. The Appellate Division properly reversed Mr. Kisoon's conviction because the failure to notify counsel that the jury deadlock note indicated a 10 to 2 vote for conviction or otherwise accurately convey its content and tone was a "mode of proceedings" error. (*People v O'Rama,* 78 NY2d 270; *People v Cook,* 85 NY2d 928; *United States v Ronder,* 639 F2d 931; *People v Coons,* 75 NY2d 796; *People v Jones,* 278 AD2d 805; *People v Guzman,* 259 AD2d 632; *People v Heath,* 234 AD2d 388; *People v Wiemeier,* 222 AD2d 972; *People v Tavares,* 212 AD2d 646; *People v Bici,* 211 AD2d 804.)

*Frank J. Clark, District Attorney,* Buffalo (*Donna A. Milling* and *J. Michael Marion* of counsel), for appellant in the second above-entitled action. I. Defendant was not prejudiced as a result of the court's failure to respond to the jury's note and error, if any, is harmless. (*People v Lourido,* 70 NY2d 428; *People v Agosto,* 73 NY2d 963; *People v Miller,* 6 NY2d 152; *People v Jackson,* 20 NY2d 440, 391 US 928; *People v Cooke,* 292 NY 185; *People v Malloy,* 55 NY2d 296, 459 US 847; *People v Burgos,* 248 AD2d 547, 92 NY2d 923; *People v Almodovar,* 62 NY2d 126; *People v Phillips,* 258 AD2d 393, 93 NY2d 976; *People v Agosto,* 73 NY2d 963.) II. Defendant's claim that the court violated *People v O'Rama* by paraphrasing the contents of a jury note is unpreserved for appellate review. (*People v O'Rama,* 78 NY2d 270; *People v Cook,* 85 NY2d 928; *People v Starling,* 85 NY2d 509; *People v DeRosario,* 81 NY2d 801; *People v Cintron,* 273 AD2d 84, 95 NY2d 889; *People v Jones,* 247 AD2d 272, 92 NY2d 927; *People v Kisoon,* 23 AD3d 18; *People v Parker,* 304 AD2d 146, 100 NY2d 585; *People v Schojan,* 272 AD2d 932, 95 NY2d 871.)

*Thomas Theophilos,* Buffalo, for respondent in the second above-entitled action. I. The Appellate Division correctly concluded that the trial court's *O'Rama* violations were so inherently prejudicial as to require a new trial and counsel was ineffective for failing to object to those violations. (*People v Henning,* 271 AD2d 813; *People v Gonzalez,* 293 NY 259; *People v Morse,* 182 AD2d 781; *People v Curet,* 256 AD2d 1017; *United States v Robinson,* 560 F2d 507; *People v O'Rama,* 78 NY2d 270; *People v Cook,* 85 NY2d 928; *People v Heath,* 234 AD2d 388; *United States v Ronder,* 639 F2d 931; *People v Sanchez,* 244 AD2d 922.) II. Defendant was absent from the court's recharge of count 3 mandating reversal of the conviction. The Appellate Division erred when it failed to reverse on this ground. (*United States v Toliver,* 330 F3d 607; *United States v Gagnon,* 470 US 522; *People v Ciaccio,* 47 NY2d 431; *People v Rodriguez,* 76

NY2d 918; *People v Mehmedi,* 69 NY2d 759; *People v Mullen,* 44 NY2d 1; *People v Caballero,* 221 AD2d 459; *People v Vargas,* 278 AD2d 807; *People v Velasquez,* 1 NY3d 44.)

## OPINION OF THE COURT

Chief Judge KAYE.

In each appeal, we are asked to determine whether a trial court committed a mode of proceedings error when it failed to disclose, or significantly paraphrased, a jury note. We conclude that it did.

In *People v Kisoon,* the People alleged that on June 5, 2001, defendant, from inside a parked car, sold an undercover police officer two plastic "twists" of cocaine for $40 prerecorded buy money. The field team arrested defendant approximately one minute later. The police searched defendant and recovered $20 of the buy money from defendant's pocket and 40 bags of cocaine from his underwear.

During jury deliberations, the trial court received the following jury note: "We took a vote. We are not unanimous. We are 10 guilty to 2 not guilty on all three counts. Furthermore, we believe that further deliberation will not change our decision." Outside the jury's presence, the court told the parties that "[t]he jury has sent the Court a note saying that further deliberations are hopeless, that they are hopelessly deadlocked. Bring in the jury." When the jurors were present in the courtroom, the court announced: "The jury sent the Judge a note, 'We believe that further deliberation will not change our decision, 3:25 p.m.' " Without first consulting counsel or apprising counsel of its intended response, the court admonished the jurors to take their responsibility seriously and to continue deliberations. Defense counsel neither asked to see the note nor objected to the supplemental charge.

The next day, the jury convicted defendant of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. The Appellate Division in a three-two decision reversed defendant's conviction and ordered a new trial, citing the trial court's critical failure to disclose the jury vote. The dissent would have required preservation.

In *People v Martin,* the People alleged that, shortly before 2:00 A.M. on August 31, 1991, defendant stabbed Yolanda Kelly 53 times, killing her. Defendant claimed that he was justified, because the decedent had initiated the knife attack.

The trial court instructed the jury on the counts of intentional murder, depraved indifference murder and criminal possession of a weapon in the third degree, as well as the lesser-included crimes of manslaughter in the first and second degrees. During deliberations, the trial court, due to a clerical error, failed to read or respond to the jury's first note, which, in part, requested, "definitions of 3 counts."

Ten minutes later, the jury sent a second note, "Want a brief readback. First Count 3 points." The court called the jury into the courtroom, and without consulting counsel, addressed the jury: "I have your note, and I understand that you want me to read back the elements necessary on the first count, is that my understanding, okay?" The court then reread the intentional murder instruction, after which a juror stated, "Second count, as long as we're here." Again without objection from defense counsel, the trial court reread its depraved indifference murder charge.

Approximately one-half hour later, the jury sent out a third note, "reread elements of 3rd ct." The trial court again failed to notify counsel of the note's content before responding to the jury. The court stated, "I have your message, your note where you say please read the elements of the third count. Before I do that, I want to just double check with you, if you do mean the third count of the indictment or if you are referring to something else. Are you asking for the third count of the criminal possession of a weapon in the third degree?" After an affirmative response, the trial court then reread its weapons possession charge, and the jury returned a guilty verdict.

The Appellate Division initially affirmed defendant's convictions for intentional murder and criminal possession of a weapon in the third degree but later granted defendant's motion for a writ of error coram nobis. Concluding that the trial court had committed a mode of proceedings error, the Appellate Division, in a three-two decision, reversed defendant's conviction and ordered a new trial.

In each case, we affirm the order of the Appellate Division.

The governing statute, CPL 310.30, provides:

> "At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the

courtroom and, *after notice to both the people and counsel for the defendant,* and in the presence of the defendant, must give such requested information or instruction as the court deems proper. With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper" (emphasis added).

As we made clear in *People v O'Rama* (78 NY2d 270, 277 [1991]), the trial court's core responsibility under the statute is both to give meaningful notice to counsel of the specific content of the jurors' request—in order to ensure counsel's opportunity to frame intelligent suggestions for the fairest and least prejudicial response—and to provide a meaningful response to the jury. To those ends, we outlined the following procedure for dealing with jury notes:

"[W]henever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel. Such a step would ensure a clear and complete record, thereby facilitating adequate and fair appellate review. After the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses . . . [T]he trial court should ordinarily apprise counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate *before* the jury is exposed to the potentially harmful information. Finally, when the jury is returned to the courtroom, the communication should be read in open court so that the individual jurors can correct any inaccuracies in the transcription of the inquiry and, in cases where the communication was sent by an individual juror, the rest of the jury panel can appreciate the purpose of the court's response and the context in which it is being made" (*id.* at 277-278).

As the Appellate Division observed in *Kisoon,*

"[t]here are few moments in a criminal trial more critical to its outcome than when the court responds to a deliberating jury's request for clarification of the law or further guidance on the process of

deliberations. Indeed, the court's response may well determine whether a verdict will be reached, and what that verdict will be (*see People v Ciaccio*, 47 NY2d 431, 436 [1979])" (*People v Kisoon*, 23 AD3d 18, 20 [2d Dept 2005]).

Although we have recognized that some departures from the procedures outlined in *O'Rama* may be subject to rules of preservation (*People v DeRosario*, 81 NY2d 801 [1993]; *People v Starling*, 85 NY2d 509 [1995]), a failure to fulfill the court's core responsibility is not. Here, neither case is distinguishable from *O'Rama*.

In *Kisoon*, as in *O'Rama*, failure to read the note verbatim deprived counsel of the opportunity to accurately analyze the jury's deliberations and frame intelligent suggestions for the court's response. Counsel might have requested, for example, an *Allen* charge stressing the importance of individual jurors not surrendering conscientiously held views merely for the purpose of returning a verdict. As in *O'Rama*, the "court's failure to notify counsel of the note's contents, which resulted in a denial of the right to participate in the charging decision, was inherently prejudicial" (78 NY2d at 280).

In *Martin*, too, we conclude that defendant was denied his core right to the assistance of counsel in responding to the jury's request. While it is undisputed that the trial court erred in failing to notify counsel or to respond to the jury's first note, the People argue that the court's subsequent instructions to the jury cured the error. The first, undisclosed jury note requested "definitions of 3 counts." Without reaching the trial court's treatment of the second and the third notes, we cannot say with requisite certainty that the jury request for "definitions" was cured by the court's later responses (*see People v Lykes*, 81 NY2d 767, 768-769 [1993] [where jury requested "(l)egal (t)erminology," and court asked whether it wanted "the legal definition of each crime . . . or . . . the elements repeated"]).

Finally, though it hardly needs restating, we underscore the desirability of adherence to the procedures outlined in *O'Rama*.

Accordingly, in each case, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ and SMITH concur; Judges PIGOTT and JONES taking no part.

In each case: Order affirmed.