McGuire, J. (dissenting).
In this case, the trial judge momentarily stumbled before all but immediately righting his slip, an error that prompted no objection and cannot reasonably be thought to have affected the fairness of the trial or the conduct of the defense. Indeed, the specific information in the jury’s note that the judge briefly withheld—after alerting the parties to the fact that the information was in the note—was so equivocal that it could not reasonably have been acted upon by the *109 parties. Accordingly, although I certainly agree that the judge should not have stumbled, I cannot agree that the technical error that occurred in this case is one that is so momentous as to be a mode of proceedings error constituting “a failure to fulfill the court’s core responsibility” (People v Kisoon, 8 NY3d 129, 135 [2007]) that need not be preserved for appellate review.
As the Court of Appeals has made clear, “some departures from the procedures outlined in [People v O’Rama, 78 NY2d 270 (1991)] may be subject to rules of preservation” {People v Kisoon, 8 NY3d at 135). But “a failure to fulfill the court’s core responsibility is not [subject to rules of preservation]” (id.). Thus, in People v DeRosario (81 NY2d 801 [1993]), the trial court erred when, after answering specific written inquiries from the jury, the court engaged in several oral colloquies with the jury that included “substantive discussions regarding reasonable doubt and constructive and actual possession, matters not part of the original written queries from the jury” {id. at 802). Moreover, “[t]he manner in which these discussions [regarding reasonable doubt and constructive and actual possession] were conducted did not allow defense counsel ... to participate in the formulation of the responses” {id. at 802-803). Notwithstanding that the court thus deprived defense counsel of an opportunity to participate in the formulation of the court’s responses to the jury, the Court “reject[ed] defendant’s contention that no preservation [was] necessary” (id. at 802). Because defense counsel “was present, was given notice, and participated in formulating the responses to the written jury queries,” the Court “concluded] under these circumstances that traditional preservation rules are required” (id. at 803).
One of the procedures outlined in O’Rama “calculated to maximize participation by counsel at a time when counsel’s input is most meaningful” (78 NY2d at 278) is that a substantive written communication from the jury “should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel” (id. at 277-278). And “[a]fter the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses” (id. at 278). But in People v Starling (85 NY2d 509 [1995]), the trial court did not mark the note as an exhibit and did not give counsel a full opportunity to suggest appropriate responses. Rather, with respect to two separate substantive notes from the jury, the court read the contents of the notes to counsel at the same time the notes were read to the *110 jury and then proceeded to respond to the notes (id. at 514). The Court of Appeals distinguished O’Rama, “where the trial court [completely] withheld from counsel the contents of a juror’s note” before responding to it (id. at 516). Stressing that defendant “did not lodge any objection to the manner of proceeding or to the substance of the court’s responses” (id. at 514), the Court held that the claim of error was not preserved for review: “counsel’s silence at a time when any error by the court could have been obviated by timely objection renders the claim unpreserved and unreviewable here” (id. at 516).
In this case, the trial court received a note that both stated that the jury was deadlocked and gave the specific breakdown of the votes on each count, but, notably, gave no indication of whether the votes were to acquit or convict. The trial court did not show the note to the parties before responding to it. However, the court did paraphrase the note and everything the court said about its contents was accurate. That is, the court expressly informed the parties that while the note stated that the jury was deadlocked and what the vote was on each count, it did not indicate whether any vote was for acquittal or guilt. The court’s error was one of omission in that the court did not—or, more accurately, at least initially did not—tell the parties what the votes were.
As is evident, this case is plainly distinguishable from Kisoon (supra) in which the trial court did not tell the parties that the note reported what the votes were on each count. In that case, moreover, the note did state what the split was in terms of guilty and not guilty votes. Thus, counsel was completely deprived of an opportunity to consider whether the content of the note specifying the votes was meaningful information that might inform a suggested response. Of course, moreover, counsel could not have objected to the court’s failure to inform the parties about specific information in a note of which counsel had no knowledge at all. It also bears emphasis that if the trial court here had accurately told the parties what the votes were on each count without physically showing the note to the parties, defendant would not have any claim for reversal of his conviction (People v Starling, 85 NY2d at 516).
Defendant voiced no objection at all to the court’s statement that it had not shown the note itself to the parties “because it’s an open debate as to whether [it] is appropriate to let you see *111 what those numbers are at this time.”[1] Although the court asked if either side wished to “make a record” on the matter, at no time before the court responded to the note did defendant ask to see the note or to be informed about what the votes were on each count.[2] That failure is all the more significant in this case because there is good reason to believe that if an objection or request to see the note had been registered, the court would have shown the parties the note. After all, after responding to the note the court apparently reconsidered its initial position and sua sponte allowed the parties to see the note. But whether the court in fact would have shown the parties the note in response to a timely protest is irrelevant. No case holds that a *112 prediction about whether the trial court would have corrected an error in response to a timely protest has any bearing on whether a claim of error is preserved in the absence of such a protest. Another critical aspect of this case is that even when the court, immediately after responding to the note, sua sponte did an about face and showed the note to the parties, defendant did not object that he should have seen the note earlier. Nor, having become aware of the specific but equivocal votes on each count, did defendant ask the court to do anything or even suggest that he would have asked the court to do other than as the court did when it responded to the note.
I think it self-evident that no good reason exists for trial counsel’s failure to object. In any event, that failure to object is utterly inconsistent with defendant’s appellate claim that, albeit temporarily, he was deprived of critical information that might have guided him in suggesting how the court should respond to the note. Tellingly, but not surprisingly, when defendant’s appellate counsel was asked at oral argument if she could think of one substantive reason why trial counsel would not have objected, counsel could not provide one.
To conclude that defendant’s failure to object is of no significance, and to accept defendant’s current claim of error—that he is entitled to reversal of the conviction and a new trial precisely because he should have been apprised of the specific but equivocal votes that he never asked for—would encourage gamesmanship and waste the scarce judicial and other public resources expended in trying defendant. Avoiding precisely those unseemly and imprudent results is the central purpose of preservation requirements. Thus, in People v Dekle (56 NY2d 835 [1982]), the defendant voiced no objection to the court’s charge on elements of the offense charged but contended on appeal that the instructions were erroneous. In rejecting that appellate claim, the Court stated as follows:
“There is neither constitutional nor jurisprudential error in permitting guilt to be determined under a penal statute as construed by the common assumption of both attorneys and the court. To hold otherwise is to encourage gamesmanship and waste judicial resources in order to protect a defendant against a claimed error protection against which requires no more than a specific objection on his part” (id. at 837).
Here, too, the common assumption of the attorneys was that *113 the specific but equivocal information about the votes was unnecessary. Given that defense counsel was almost immediately thereafter provided with exactly that information and again neither protested nor requested that the court take any action in light of that information, the reasoning of Dekle applies here with at least equal force.
The initial failure of the court to show the parties the note or relate all of its contents is an error of no moment for it affected nothing. In cases such as Kisoon where the trial court failed to alert the parties to the existence of specific contents of the note, it is reasonable to conclude that the court’s error “prevented] defense counsel from participating meaningfully in [a] critical stage of the trial” (People v O’Rama, 78 NY2d at 279). But under the particular facts of this case, it would be wholly speculative to conclude that the trial court’s brief slip was meaningful.
Indeed, any such speculation is squarely contradicted by defense counsel’s failure to object at any time, his failure to suggest that receiving the specific information shortly after it was briefly withheld would have had any bearing on how he would have suggested the court respond to the note, and his failure to ask the court to do anything after he received the information. Defense counsel asked for a mistrial after being told everything about the note except for the specific but equivocal information about the vote. If counsel would not have asked for a mistrial had that information been made known to him, defendant was not prejudiced because the court, did not grant the motion. If counsel nonetheless would have sought a mistrial, defendant also was not prejudiced. After all, it is manifestly unreasonable to suppose that the court would have granted the motion on the basis of that equivocal information (which, of course, was known to the court). Thus, any conceivable claim of prejudice must be premised on the notion that defendant might have sought some other relief from the court and on the notion that the brief delay in receiving that equivocal information somehow prevented defendant from seeking that relief. Not surprisingly, we are left to wonder both what that other relief might have been and how the delay could have impaired defendant’s ability to seek it.
For these reasons, the trial court’s error deprived defendant of nothing of substance and thus was but a technical error that did not affect any of defendant’s substantial rights. Accordingly, in my view the majority’s holding cannot be reconciled with the *114 Legislature’s command that “appellate court[s] must determine an appeal without regard to technical errors or defects which do not affect the substantial rights of the parties” (CPL 470.05 [1] [emphasis added]). To do otherwise is a “failure to fulfill [a] . . . core responsibility” (People v Kisoon, 8 NY3d at 135) of appellate courts that is itself tantamount to an appellate mode of proceedings error. Defendant was convicted of a serious crime after a fair, albeit not a perfect, trial that did not deprive him of any constitutional right (see People v Henry, 95 NY2d 563, 565 [2000] [“The Constitution guarantees a defendant a fair trial, not a perfect one”]). The majority nonetheless deprives the People of a fairly obtained conviction despite both the fairness of the trial and the important finality interest served by the requirement of a timely objection (see People v Michael, 48 NY2d 1, 6 [1979] [“the very real interest of the State in achieving finality in a criminal prosecution mandates that . . . objections be timely raised”]).
The majority does not take issue with me on the trivial and inconsequential nature of the trial judge’s quickly corrected slip or make any effort to suggest any concrete respect in which defendant was prejudiced. Rather, adopting defendant’s appellate position, the majority simply asserts that “the court’s omission renders consideration of whether defendant sustained prejudice immaterial.” This assertion, however, assumes that the court committed a mode of proceedings error. If the court did commit such an error, I certainly would agree that whether defendant sustained prejudice is immaterial. But in determining whether the brief slip is a mode of proceedings error, it makes no sense to regard its trivial and inconsequential nature as immaterial. The majority cites no authority supporting the curious proposition, which is in any event inconsistent with the mandate of CPL 470.05 (1), that in determining whether an error is so fundamental as to be a mode of proceedings error, its trivial and inconsequential nature is irrelevant.
Nor is defendant entitled to any relief on account of the court’s handling of the earlier note that was received as deliberations recommenced on the morning of Monday, September 25, 2006. That note simply reiterated the jury note received on the afternoon of Friday, September 22, 2006. Both notes stated that the jury was deadlocked. The note on Friday was received at the beginning of the afternoon session, and the trial minutes begin with the trial court asking “Either side want to be heard on this note before I bring the jury in?”, to which *115 defense counsel replied “No, your honor.” Viewed in light of the presumption of regularity (People v Velasquez, 1 NY3d 44, 48 [2003]), this strongly indicates that there had already been an off-the-record discussion of Friday’s note with defense counsel, who was apprised of the note’s contents (see People v Salas, 47 AD3d 513 [2008], lv denied 10 NY3d 844 [2008]).
When sending the jury home for the weekend, the court stated that it would charge the jurors when they returned for further deliberations on Monday morning. Thereafter, the court told counsel that it had intended to give an Allen charge, but had decided otherwise. When court reconvened the following Monday, the jury sent out a new note claiming to be deadlocked, whereupon the trial court gave an Allen charge. The parties were then given an opportunity to raise any concerns, and defense counsel stated that he had no objection to the court’s actions.
Under these particular circumstances, where the first note on Monday merely reiterated the note on Friday, which defense counsel read and discussed with the court, and where the court’s response to Monday’s first note was the same as it had proposed in response to Friday’s note, counsel received meaningful notice and an opportunity to participate in the subsequent charging decision, satisfying the court’s core duties under CPL 310.30 (see People v O’Rama, 78 NY2d at 278 [permitting a modification of standard procedures when responding to a jury note for “special circumstances”]).
Defendant’s claim concerning the admission of uncharged crimes evidence is not preserved for review and I would not review it in the interest of justice. As an alternative holding, I would rule that the challenged evidence properly was admitted as it clearly was relevant to the witness’ ability to identify defendant. Defendant’s other claims also are both unpreserved and without merit.
Lippman, EJ., Williams and Freedman, JJ., concur with Tom, J.; McGuire, J., dissents in a separate opinion.
Judgment, Supreme Court, Bronx County, rendered November 2, 2006, reversed, on the law, and the matter remanded for a new trial.

. Particularly given that the trial in this case took place before Kisoon was decided, the trial court’s initial conclusion that the parties should not be apprised of the specific but equivocal votes is understandable enough. As all criminal trial practitioners know, juries are commonly if not invariably instructed that “in any note that you send me, do not tell me what the vote of the jury is on any count” (CJI2d[NY] Sample Full Charges and Sample Verdict Sheets, Final Instructions, Jury Deliberations rule 4). The jury in this case apparently was not given such an instruction. In any event, that instruction is consistent with what this Court said in a case in which the jury was split 10 to 2 for acquittal but the trial judge erroneously told the parties he had reliable information that the jury was split 10 to 2 for conviction: “It is, of course, very basic that jury deliberations are to be conducted in absolute secrecy and, accordingly, that the status of those deliberations is not to be divulged by anyone . . . prior to the announcement of the verdict” (Matter of Randall v Rothwax, 161 AD2d 70, 75 n [1990], affd 78 NY2d 494 [1991], cert denied sub nom. Morgenthau v Randall, 503 US 972 [1992]). It now appears, however, that although an instruction to the jury that it should not disclose the vote in any note is proper, the parties nonetheless must be informed about the vote if the jury disregards the instruction.

. After the court stated why it had not shown the actual note to the parties and invited counsel to make a record, the prosecutor stated “the numbers really I guess are inconsequential for defense and I to see those.” At no point during the ensuing colloquy did defense counsel voice any disagreement with the prosecutor’s conclusion that the various votes were inconsequential. To be sure, after the prosecutor next stated that it was up to the court “whether or not you want to show them”—another statement with which defense counsel never disagreed—the prosecutor went on to state that “[w]e like to see them.” But the “we” to whom the prosecutor referred cannot reasonably be thought to include defense counsel. After all, there were two prosecutors trying the case and defense counsel never chimed in at any time and stated that he, too, wanted to see “the numbers.” Moreover, the court’s initial ruling that the actual note with the votes should not be shown to the attorneys preceded the prosecutor’s request to see “the numbers.” Accordingly, there is no basis for concluding that the court’s initial ruling and the prosecutor’s statement preserved defendant’s current claim for appellate review (see People v Colon, 46 AD 3d 260, 263 [2007] [holding that CPL 470.05 (2) requires a “causal nexus” between a “protest” by a party and the question “expressly decided” by the trial court]).