■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TROY LOCKLEY, Appellant. [922 NYS2d 476]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Aloise, J.), rendered October 7, 2008, convicting him of murder in the second degree (two counts), burglary in the first degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial.

The defendant, while acting in concert with another, allegedly invaded a home in Bellerose, Queens, and shot the victim, killing him.

At the defendant's trial, during deliberations, the jury sent six notes to the Supreme Court. On at least five of those occasions, the Supreme Court did not inform defense counsel of the contents of the notes and allow him the opportunity to suggest an appropriate response before recalling the jury. Instead, the Supreme Court disclosed the notes to the attorneys for the first time in front of the jury and immediately provided a formal response. Among other things, the jury asked for an explanation of the deliberation process, inquiring, "what [should we] base our decision on?" The Supreme Court responded, "[y]our God given sense and the evidence." In the last two communications, the jury indicated that it was deadlocked, and the Supreme Court responded each time by giving a truncated *Allen* instruction (*Allen v United States*, 164 US 492 [1896]). Although defense counsel objected to the substance of the Supreme Court's second *Allen* instruction, he never objected to the court's procedure in dealing with the jury's notes. The jury subsequently returned a verdict convicting the defendant of, among other things, murder in the second degree.

In *People v O'Rama* (78 NY2d 270 [1991]), the Court of Appeals set forth the procedure for handling communications from the jury in conformance with CPL 310.30. Whenever a substantive written jury communication is received by the court, it should be marked as a court exhibit and, *before* the jury is recalled to the courtroom, read verbatim into the record in the presence of counsel. After the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses. The court should then ordinarily apprise counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate before the jury is exposed to any potentially harmful information. Once the jury is returned to the courtroom, the communication should be read in open court. Although some deviations from this procedure may be warranted depending on the circumstances, where the court fails to fulfill its "core responsibility" under CPL 310.30 by depriving the defendant of meaningful notice of the communication or a meaningful opportunity to participate in the formulation of the court's response, the error affects the mode of the proceedings (*People v Kisoon*, 8 NY3d 129, 134-135 [2007]; *see People v O'Rama*, 78 NY2d at 279-280; *People v Surpris*, 83 AD3d 742 [2011]). Thus, the error need not be preserved, and prejudice manifestly results (*see People v O'Rama*, 78 NY2d at 279-280).

In *People v Cook* (85 NY2d 928 [1995]), the Court of Appeals

was presented with a situation where a defendant was deprived of a meaningful opportunity to participate in the trial court's formulation of a response to a juror's note. There, after the court received a note from a single juror indicating that the jury was at an "emotional impasse" (*id.* at 930), defense counsel asked to approach the bench, but he was told that he could not do so and that he should not interrupt the court. Counsel continued to protest, noting that he had not seen the note. Without responding to counsel, the court read the note aloud and then instructed the jury to decide the case on the evidence, without letting emotions enter into its deliberations. After the jury left the courtroom, the Supreme Court and defense counsel engaged in a colloquy during which the court ruled that defense counsel had absolutely no right to suggest or comment on the response to the juror's note, and peremptorily directed counsel not to attempt to assert such a right. In concluding that the trial court had committed a mode of proceedings error, the Court of Appeals noted that *O'Rama* required that counsel have "the opportunity to be heard *before* the response is given," and that the trial court had "entirely deprived defendant of his right to have specific input into the court's response to the single juror's note" (*id.* at 931 [internal quotation marks omitted]).

Here, the Supreme Court's actions in repeatedly violating the procedure set forth in *O'Rama* by reading the jury notes for the first time in front of the jury and immediately providing a formal response were effectively the same as telling counsel that he had no right to participate in suggesting a response (*see People v Cook*, 85 NY2d at 931). The purpose of CPL 310.30 and the *O'Rama* decision is to maximize the participation of counsel at a time when counsel's input is most meaningful, that is, before the court gives its formal response to the jury (*see People v Cook*, 85 NY2d at 931; *People v O'Rama*, 78 NY2d at 278). In that way, counsel can frame intelligent suggestions for the court's response and prevent the jury from being exposed to potentially prejudicial information (*see People v Kisoon*, 8 NY3d at 134; *People v O'Rama*, 78 NY2d at 278). The nature of the jury's inquiries made this a critical moment in the trial (*see People v Kisoon*, 23 AD3d 18, 20 [2005], *affd* 8 NY3d 129 [2007]). The jury was requesting clarification as to what to "base [the] decision on" and insight into how to continue its deliberations in the face of a deadlock. This was not a request for a mere ministerial readback of the elements of a charged offense or the viewing of an exhibit entered into evidence, where the court's response would be obvious (*cf. People v Starling*, 85 NY2d 509, 516 [1995] [verbatim rereading of intent charge previously given on several occasions]; *People v Bryant*, 82 AD3d 1114 [2011]

[jury merely requested readbacks of certain testimony and of the definitions of certain crimes, and to be provided with certain evidence]; *People v Hinton*, 61 AD3d 481 [2009] [noting that two of the inquiries required essentially ministerial responses that were not likely to require significant input]; *People v Snider*, 49 AD3d 459 [2008] [notes simply called for readbacks of portions of the court's charge]; *People v Campbell*, 48 AD3d 204 [2008] [rereading of the elements of the crimes]). Rather, the jury's notes called for a substantive response that required careful crafting after hearing argument from both the People and the defense (*see People v Kisoon*, 8 NY3d at 134). Since defense counsel was not afforded the opportunity to provide suggestions, he was prevented from participating meaningfully at this critical stage of the proceedings (*see People v O'Rama*, 78 NY2d at 279; *People v Surpris*, 83 AD3d 742 [2011]).

Of course, even where the jury's request calls for a ministerial response, a court's failure to allow counsel the opportunity to participate meaningfully in formulating the court's response constitutes error, albeit one which requires preservation. Here, however, the error went to the mode of proceedings. Moreover, since the defendant was deprived of the opportunity to participate in formulating a response to the jury's notes, prejudice manifestly resulted (*see People v Kisoon*, 8 NY3d at 135; *People v Cook*, 85 NY2d at 931; *People v O'Rama*, 78 NY2d at 279-280). Thus, despite defense counsel's failure to object to the Supreme Court's handling of the jury's notes, reversal is required.

The defendant's remaining contentions are academic in light of our determination.

Accordingly, the judgment is reversed and the matter must be remitted to the Supreme Court, Queens County, for a new trial. Florio, J.P., Dickerson, Chambers and Lott, JJ., concur.